**SMITH v. HAMILTON.**

No. 9939.

Court of Civil Appeals of Texas.
Austin.

March 7, 1951.

Rehearing Denied March 28, 1951.

Smith & Lear, San Angelo, for appellant.

W. A. Johnson and Sedberry & Williams, all of San Angelo, for appellee.

GRAY, Justice.

Appellee filed this suit against appellant and alleged that, during the fall of 1948, he and appellant entered into a verbal contract whereby appellee agreed to work for appellant as a farm hand during the year 1949. The terms of the contract as alleged by appellee were that he was to be paid $3 per day for each day he worked as such farm hand; that, in addition thereto, he was to receive the cotton produced on fifty acres of land; that appellant was to furnish him a house to live in, and one cow to milk, with roughness for the cow, but appellee to furnish such other feed as he might feed said cow.

Appellee alleged that he moved on appellant's farm and continued to work under the terms of the contract until on or about June 20, 1949, at which time he was discharged without good cause. He further alleged that appellant designated the fifty acres from which appellee was to receive the cotton; that the same had been planted, and that on June 20 the cotton was up and growing.

The suit was for the value of the cotton from the fifty acres of land, and for $450 as wages for one hundred and fifty days that appellee alleged he would have worked if he had not been discharged, he having been paid his wages up to June 20. The petition contains an alternative plea in quantum meruit for the reasonable value of appellee's services.

Appellant answered by special exceptions; a general denial; that appellee abandoned the contract; that appellee was indebted to him in the sum of $500; and a pleading relative to the reasonable cost of producing the cotton on the fifty acres of land. There is no pleading by appellant (and no proof was offered by him) that appellee could have diminished his damages by making other contracts or securing other employment. However, appellee alleged that after he was discharged he was compelled to go elsewhere and seek work, and that during the balance of the year he earned $948.

During the trial the parties made the following stipulation:

"Total cotton ginned from the 50 acres, thirteen bales, bringing $1,773.95
Cotton seed .................. 178.11

$1,952.06

"Reasonable expense on cost of raisin crop and all of expenses were borne by W. H. Smith:

| | |
|---|---|
| "Ginning .............. | $102.10 |
| Picking .............. | 585.84 |
| Breaking twice ........ | 150.00 |
| Bedding once and planting twice .......... | 150.00 |
| Cotton seed for planting | 50.00 |
| Chopping ............ | 48.00 |
| Plowing cotton 3 times | 150.00 |
| Cash advanced and cow feed to C. E. Hamilton .............. | 144.50 |

$1,380.44."

It was also stipulated between the parties as follows:

"It is agreed by and between the parties by their counsel that the facts shown on plaintiff's Exhibit 2 (Exhibit 2, above quoted) are to be found by the court and no issue submitted to the jury thereon, the court making such findings as are material to the judgment to be entered in the case.

"It is further agreed that the plaintiff worked for the defendant 111 days in the year 1949 prior to June 20, 1949, and that the reasonable and fair wage if paid in cash only for such work was the sum of $6.00 per day, and that the court can so find if these facts are material to the judgment. It is further agreed that the monthly rental on the house occupied by the plaintiff after June 20, 1949, until the end of the year was $15.00 a month.

"It is agreed by all parties that C. E. Hamilton under any conditions is only a laborer and that Henry Smith was the employer and that he was the employee."

Only three issues were submitted, and the jury found: (1) that appellant was to cultivate the fifty acres of cotton and appellee was to have all of the cotton from the fifty acres as part of his wages for 1949; (2) that it was not the contract that appellee was to have only one-half of the cotton from the fifty acres; and (3) that appellee was discharged on or about June 20, 1949, without good cause. No requests for the submission of additional issues were made by either party.

The trial court rendered judgment for appellee for $766.12. The judgment does not furnish an accurate guide for determining how this amount was arrived at, but recites: "And the court finds that upon said verdict and the facts admitted by the parties and found by the court herein in the trial of said cause that the plaintiff is entitled to recover of and from the defendant his judgment herein for the sum of * * * ($766.12)."

Appellant's first five points complain: that the trial court erred in allowing any recovery for work appellee would have done for appellant after June 20, 1949, at $3 per day; no issue was requested, and none submitted, on this element of appellee's cause of action; since the same was an ultimate issue the court erred in rendering a judgment thereon; that the burden was on appellee to obtain a jury finding on the issue, and that there is no evidence to support a finding of $450 for wages appellee would have earned. Appellee's brief answers these points by saying the trial court did not so err.

Appellee, in his brief, says: "There was no direct testimony from any witness as to the number of days plaintiff would have worked for defendant in 1949, after June 20th." And ". * * * no testimony as to how many days the plaintiff did in fact actually work for other people after June 20, 1949." But says the finding of the trial court is supported by circumstantial evidence.

From the record and the briefs before us it is clear that the trial court arrived at the sum of $766.12 by taking the value of the cotton and the seed as fixed by the stipulation of the parties, $1,952.06, and added the sum of $450 (one hundred and fifty days' work at $3 per day), which made a total of $2,402.06. From this amount he took the cost of picking, $585.84, the ginning, $102.10, and $948 earned by appellee by working after his discharge at places other than on appellant's farm.

It was the duty of the trial court to apply the correct measure of damages to the facts. 13 Tex.Jur.Sec. 170, p. 314. And appellee was entitled to recover the benefits of which he was deprived by reason of his wrongful discharge. It appears to be a well established rule that, "Where the employee is discharged without cause, or is prevented by the employer from completing the performance, he is entitled to recover for the part performed, and the damages he has sustained by reason of the breach of contract, by the employer." McFaull v. Collins, Tex.Civ.App., 208 S.W.2d 142, 143, Er. Ref. This rule means no more and no less than that the discharged employee is entitled to compensation for the loss he has sustained. When we come to find the loss sustained by appellee, we must apply the correct measure of damage, and, in answering this question, it must be here determined whether or not it was proper for the trial court to deduct the full amount of $948. If not, then the error of the trial court (if it was error) in allowing appellee a recovery for one hundred and fifty days' work, if it be conceded that that item of recovery is not supported by the evidence, resulted to the benefit and not the harm of appellant. This is true because the record shows that appellee, by working after his discharge, earned more than he would have earned if he had been permitted to work on appellant's farm for the full number of days he alleged he would have worked.

In Friemel v. Crouch, Tex.Civ.App., 189 S.W.2d 764, 766, Er. Ref. W. M., appellee sued appellant to recover the unpaid portion of appellee's wages as a farm hand under a contract whereby appellant agreed to pay appellee $75 per month, beginning January 1, 1943, and terminating January 1, 1944, and as additional compensation appellee was to receive two acres of wheat

for each of the twelve months he worked for appellant and, also fifteen acres of the row crop raised on appellant's farm. There the court said: "There is no difference between the relationship created by a contract of employment such as that shown to have existed between appellant and appellee and the ordinary relationship existing between a landowner and a sharecropper. Each is considered as creating the relationship of an employer and employe."

By the weight of Texas authority, the rule of minimizing the damages is made applicable to cases such as is before us, and the measure of recovery is the profits that would have been earned under the contract, less what the employee earned in other employment, or by the exercise of reasonable diligence could have earned during the unexpired portion thereof. Rogers v. McGuffey, 96 Tex. 565, 74 S.W. 753; Crews v. Cortez, 102 Tex. 111, 113 S. W. 523, 38 L.R.A.,N.S., 713, and annotations. For further annotations on this subject, see: 15 A.L.R., 751, and "Farming Contracts", same volume, p. 765. This general rule, however, does not require a wrongfully discharged employee to minimize his damage where his contract does not require the use of some special instrumentality, and the contract is not one that must be performed by him personally, but may be performed by the party's employees or subordinates, and therefore, does not preclude the party from performing other employment. Annotations, 15 A.L.R., 752. It is also the rule that the burden is on the employer to plead and prove that the employee could have diminished his damages. Porter v. Burkett, 65 Tex. 383; Phelps v. Connellee, Tex.Com.App., 285 S.W. 1047; Bost v. McCrea, Tex.Civ.App., 172 S.W. 561, Er. Ref.

We think it can not be argued that appellee could have performed his contract by employees and subordinates. We also think appellee, by pleading and proving he earned $948 by working elsewhere after his discharge, relieved appellant of that burden.

It is true that appellee's contract was that he was to have all of the cotton produced on the fifty acres of land, it was not limited to any number of bales, or amount of cotton, and it was not made to depend in any manner on the number of days appellee did or did not work. Further, the finding of the jury that appellant was to cultivate the cotton is in no way challenged, but it can not be said that the contract itself fixed the measure of appellee's damage as all of the cotton produced. Appellee has shown himself entitled to be compensated for the loss he has sustained by reason of his wrongful discharge. That loss must be determined by the measure of damages applicable, and for which reason the $948 must be deducted.

Appellee testified that he would have continued to work for appellant if he had not been discharged, but he made no estimate of the number of days. Appellee's wife testified that after June 20, he worked for other people a total of eight weeks and picked cotton for seventeen weeks and earned a total of $948. If appellee's work at places other than on appellant's farm be computed at six days per week for twenty-five weeks (the number of weeks he did work), he worked one hundred and fifty days. This was some evidence of the number of working days in the year 1949 after June 20 (aside from the fact that after that date there was six months and ten days more in the year, which fact the trial court could judicially notice). In appellant's testimony he complained appellee did not work all of the days that he needed him to work, and says he discharged appellee because he had been absent from work on a number of occasions when he was needed, but does not say, or suggest, that he did not have work for appellee on each day suitable, and, in his testimony, makes no issue of this or that he would not have directed appellee to work on each day suitable. In its entirety, the evidence shows that appellant had some four hundred acres in crops and depended on his son (W. H. Smith, Jr.), appellee, and himself to do the work, and that, prior to June 20, they worked on each day suitable for work—sometimes including Sunday; appellee worked at whatever work was assigned him, whether it was milking cows, working at appellant's home,

or in the fields. From this and the further evidence showing the amount of land appellant had in cultivation, the farming implements he possessed, the kind and character of work shown to have been done by appellee prior to June 20, together with the contract itself "that appellee was to work as a farm hand during the year 1949," is evidence that the parties contemplated that appellee would work on the days suitable, and the fact that he did work at other places for twenty-five weeks is some evidence of the number of days he would have worked, if permitted, under his contract. Since there is no dispute in the record as to this element of appellee's cause of action, a jury issue was not presented and the trial court did not err in failing to submit any issue thereon.

Appellant's sixth, and final, point complains of the action of the trial court in overruling his special exception directed to a portion of appellee's pleading as follows: "In this connection, defendant's said farm consisted of good farming land of from 300 to 400 acres, which defendant planned to plant and cultivate in cotton and other crops during 1949; and to farm which, defendant had the proper farming implements and tools, including tractors; and in this connection, the plaintiff had no farming implements of any kind; and this was at all times known to the defendant during all of said transactions."

Appellant states that his exception was that the pleading is prejudicial, and is irrelevant and immaterial.

We will discuss the exception as argued in appellant's brief.

The pleading was relevant as showing that appellant was possessed of farm lands sufficient to allow him to enter into the contract as alleged; it was material as bearing on the amount of work appellee might expect to do at $3 per day, and the allegation that appellee had no farming implements, was material as to the character of work appellee could do after his discharge as well as the kind of contract he might at such time be able to make. We think the pleading was not prejudicial.

Because it is our opinion that reversible error is not presented, the judgment of the trial court is affirmed.

Affirmed.